UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

**ROBERT MONTERROSA**,                                    Case No. 6:13-cv-00342-KI

                    Plaintiff,                        OPINION AND ORDER

     v.

**DR. HANSON; KAREN IRELAND; S.
SHELTON; DR. VARGO; M. GOWER; J.
STEVENSON; JOHN DOE, et al.
individually and in individual official
capacity**,

                  Defendants.

     Robert Monterrosa
     2605 State Street
     Salem, OR 97103

            Pro se Plaintiff

     Ellen F. Rosenblum
     Attorney General
     Michael R. Washington
     Senior Assistant Attorney General

Page 1 - OPINION AND ORDER

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096

      Attorneys for Defendants

KING, Judge:

Plaintiff Robert Monterrosa, a prisoner proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983 against individuals employed by the Oregon Department of Corrections, alleging that his Eighth Amendment right was violated by the failure of the defendants to provide adequate medical care. Before the court is defendants' motion for summary judgment. For the following reasons, I grant the motion.

**FACTS**

The following facts are taken from plaintiff's pleadings and exhibits, and from the declaration of defendant Steven Shelton, M.D.

Plaintiff is currently incarcerated at the Oregon State Penitentiary, and has been incarcerated there at all times relevant to this action. Plaintiff complains Dr. Hansen,[1] Dr. Vargo, Karen Ireland (a nurse), Jennifer Stevens[2] (a nurse supervisor), Dr. Shelton (the Medical Director), and Michael Gower (Assistant Director of Operations) failed to properly treat his back condition and negatively affected the health of his liver.

---

[1]Plaintiff incorrectly spelled Dr. Hansen's name in the caption of his Complaint.

[2]Plaintiff incorrectly referred to this defendant as J. Steven**son** in the caption of his Complaint and Supplemental Complaint.

Plaintiff signed his initial Complaint on February 22, 2013,[3] and his Supplemental Complaint was filed on June 4, 2013.[4]  I denied plaintiff's motion to further supplement his complaint by order dated May 14, 2014, and I denied his motion for reconsideration of that order in July of this year.  In his opposition to defendants' motion for summary judgment, plaintiff refers to events that occurred in late 2013 and in 2014.  These events postdate plaintiff's pleadings, however; the events relevant to plaintiff's case are limited to those that occurred prior to June 4, 2013.

The crux of plaintiff's complaint arises from Dr. Hansen's treatment of his back condition with anti-inflammatory medications, rather than more aggressive pain medications.  He believes Dr. Hansen's treatment decisions caused his liver damage.

Plaintiff initially complained of low back pain in November 2010.  Four different physicians examined plaintiff between then and February 24, 2012, prescribing bed rest, heat packs, an extra pillow, and different non-steroidal anti-inflammatories including Relafen, naproxen, and ketoprofen.  The prison ordered x-rays of plaintiff's back in October 2011, which revealed lumbar scoliosis, spondylosis, and chronic left sacroileitus.  The doctors also told him to lose weight, walk, and perform back exercises.

As relevant to his complaint, Dr. Hansen examined plaintiff on February 28, May 8, and November 27, 2012 and on March 5 (allegedly), March 26, and April 16, 2013.  Three other

---

[3]He signed the Addendum Complaint, which he attached to his form Complaint, on February 6, 2013.

[4]Plaintiff signed his Supplemental Complaint on April 30, 2013.

physicians also treated plaintiff during this time:   Dr. Paulson (on August 28, 2012), Dr. Elmore

(April 12, 2013), and Dr. Degner (June 21, 2013).

Plaintiff alleges that during his first visit with Dr. Hansen in 2012, plaintiff reported

severe back pain and Dr. Hansen refused him pain medication or any back or arch supports.  The

medical records reflect plaintiff told Dr. Hansen his back was stiff and painful upon waking in

the morning, but that his back improved with activity.  He had no radiation in his legs.  Dr.

Hansen prescribed an extra pillow and ketoprofen.[5]

Plaintiff's only problem with Ireland appears to arise out of her response to his grievance

on March 22, 2012, in which plaintiff had complained that Dr. Hansen was incompetent, and that

he had not prescribed muscle relaxants, stronger analgesics, a back brace, arch supports, or a

wider mattress.  In response, Ireland affirmed Dr. Hansen's opinion that plaintiff's arthritis was

not curable.  Ireland also told plaintiff  that he was "scheduled to see Dr. Vargo for a 2nd opinion

in the near future."  Compl. Ex. B.  Stevens signed Ireland's response as Ireland's supervisor.

Contrary to Ireland's representation, Dr. Vargo never examined plaintiff.  Accordingly, plaintiff's

claim against Dr. Vargo is that he "refused to reevaluate me for a second opinion."  Compl. Add.

¶ 17.  His claims against Ireland and Stevens are that they responded to his grievance with

deliberate indifference, they are not doctors and cannot confirm appropriate treatment, and they

failed to refer him to a specialist for treatment.

Similarly, plaintiff's only claim against Dr. Shelton arises from the doctor's denial of

plaintiff's grievance appeal; in that response, Dr. Shelton explained that plaintiff's plan of care

---

[5]Ketoprofen is used to relieve pain, tenderness, swelling, and stiffness caused by osteoarthritis and rheumatoid arthritis.
www.nlm.nih.gov/medlineplus/druginfo/meds/a686014.html (last visited Dec. 5, 2014).

did not reflect any indifference by Dr. Hansen.  Compl. Ex. D (June 18, 2012).  Plaintiff alleges

"there was no written treatment of care plan[.]"  Compl. Add. ¶ 24.

Finally, plaintiff's dispute with Gower arises from Gower's response to plaintiff's

grievance appeal, in which Gower opines that plaintiff is "receiving appropriate medical care for

you[r] condition and are being followed by your primary provider."  Compl. Ex. F (July 18,

2012).

Although plaintiff sent a kyte[6] complaining of back pain on March 9, 2012, and he was

told he would see Dr. Degner in 10 days, his mental issues precipitated the need to reschedule his

appointment.

On May 4, plaintiff again complained of back pain, and Dr. Hansen examined plaintiff

four days later.  Dr. Hansen noted plaintiff's pain and stiffness in the morning, back pain which

was aggravated by outings and prolonged walking, limited range of motion, but no radiation in

his legs.  Dr. Hansen recommended increasing walking and back exercises.  According to Dr.

Shelton this advice is "standard medical evidence based recommendations for musculo-skeletal

low back pain."  Shelton Decl. ¶ 12.

Plaintiff sent three kytes complaining of back pain and requesting information about his

treatment plan, one on June 25, one on July 25, and one on August 2, 2012, and ODOC

responded to each by indicating plaintiff was scheduled to see a doctor.  Dr. Paulson examined

plaintiff on August 28.  He noted plaintiff's lack of weakness, numbness, or bowel or bladder

dysfunction.  Plaintiff demonstrated no acute distress, and could get up and down briskly and

without using his hands.  Dr. Paulson prescribed exercises and stretches, which plaintiff refused.

---

[6]An inmate communication.

Plaintiff again complained about back pain and his need to see a doctor to address his pain, on September 30, October 7, and again on November 17, and each time ODOC responded that plaintiff would see a doctor shortly.

Dr. Hansen examined plaintiff again on November 27 and prescribed Lodine.[7]

Plaintiff complained of pain in two separate kytes, one on January 3 and one on January 9, 2013.  Plaintiff contends he saw Dr. Hansen on March 5, who purportedly concentrated on plaintiff's heart condition, rather than his back pain, but the chart notes do not reflect a visit on that date.

Plaintiff complained again on March 21 that he needed to see a doctor because the Lodine was useless.  A nurse denied plaintiff's request for aspirin on March 24 because he did not have permission for it.  He complained that day via kyte about the lack of pain medication.

Dr. Hansen prescribed naproxen[8] on March 26.  He noted plaintiff's request for pain medication, but confirmed plaintiff experienced no radiation in his lower limbs.

On April 12, Dr. Elmore informed plaintiff that his liver enzymes were elevated.  Plaintiff reported that the naxproxen did not help his pain and he felt he could not take ibuprofen because of the increased liver enzymes.  Plaintiff sought aspirin, or other pain relief.  Plaintiff told Dr. Elmore he had been "cheeking" his Atenolol (a beta blocker) and Rythmol (a heart medication),

---

[7]Lodine is used to relieve pain, tenderness, swelling, and stiffness caused by osteoarthritis and rheumatoid arthritis.  www.nlm.nih.gov/medlineplus/druginfo/meds/a692015.html (last visited Dec. 5, 2014).

[8]Naproxen is used to relieve pain, tenderness, swelling and stiffness caused by osteoarthritis, rheumatoid arthritis, juvenile arthritis, and ankylosing spondylitis (arthritis that mainly affects the spine).  www.nlm.nih.gov/medlineplus/druginfo/meds/a681029.html (last visited Dec. 5, 2014).

meaning he had not been taking them.  Dr. Elmore requested that all medications be discontinued, which included Effexor (an anti-anxiety medication) and naproxen.

Plaintiff filed a grievance about what he believed was the ill effect of the anti-inflammatory medications on the health of his liver.  He reported that Dr. Dewsnup, the infectious disease specialist, had discontinued Lodine when he learned plaintiff was taking it.  Dr. Hansen prescribed naproxen in its place, and when plaintiff questioned Dr. Hansen about this choice, Dr. Hansen told plaintiff not to worry about it.

Stevens responded to plaintiff's April 13, 2013 grievance by explaining,

All medications are filtered through the liver and pose a possible risk for liver effects, especially if your liver is already stressed due to other conditions such as hepatitis C. . . . Once your lab elevation [of liver enzymes] was detected, your medications were adjusted.  You have been evaluated by Dr. Hansen, an ultrasound, lab work for monitoring, and referral to infectious disease specialist has been ordered.  You will continue to be monitored.  Dr. Hansen has not acted with deliberate indifference in your medical care.

Summ. J. Ex. 11, at 6.  Included in plaintiff's claim against Stevens is this response to his grievance about Dr. Hansen.

As relevant to his claims, the last time Dr. Hansen examined plaintiff was on April 16.  Dr. Hansen noted the recent increase in plaintiff's liver enzymes.  He referred plaintiff to Dr. Dewsnup for further evaluation.

Plaintiff complained of pain again on May 23, noting that he had not received responses to previous kytes.  When plaintiff sent a kyte to see a doctor on June 2, plaintiff was scheduled for an appointment on June 21.  Dr. Degner examined plaintiff, noting he ambulated well and got up and down from the table well.  Dr. Degner diagnosed degenerative arthritis and discussed back and shoulder care.  He prescribed an extra pillow.

Page 7 - OPINION AND ORDER

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The initial burden is on the moving party to point out the absence of any genuine issue of material fact.  Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion for summary judgment, the court "must view the evidence on summary judgment in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party."  Nicholson v. Hyannis Air Service, Inc., 580 F.3d 1116, 1122 n.1 (9th Cir. 2009) (citation omitted).

## DISCUSSION

Although defendants make a number of arguments in favor of summary judgment, including lack of individual involvement, Eleventh Amendment immunity for official capacity actions, and qualified immunity, I need only address their argument that the defendants did not violate plaintiff's Eighth Amendment right to be free from cruel and unusual punishment.

The treatment a prisoner receives in prison and the conditions of his confinement are subject to scrutiny under the Eighth Amendment.  Helling v. McKinney, 509 U.S. 25, 31 (1993). As the Supreme Court has explained,

> The [Eighth] Amendment also imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates[.]

Farmer v. Brennan, 511 U.S. 825, 832 (1994) (internal citations and quotations omitted).  A

prison official violates a prisoner's Eighth Amendment rights only when two requirements are

met; that is, an Eighth Amendment claim must satisfy both an objective and subjective inquiry.

Lopez v. Smith, 203 F.3d 1122, 1132-33 (9th Cir. 2000).

       Defendants make no argument that the objective element of the Eighth Amendment

inquiry is not met–that element seeks to determine whether the deprivation was sufficiently

serious.  Wilson v. Seiter, 501 U.S. 294, 298 (1991).  In the context of a claim for failure to

provide medical care, plaintiff must establish a "serious medical need."  Estelle v. Gamble, 429

U.S. 97, 104 (1976).  A serious medical need is the kind of injury that "a reasonable doctor or

patient would find important and worthy of comment or treatment; . . . that significantly affects

an individual's daily activities; or [causes] chronic and substantial pain."  Lopez, 203 F.3d at

1131 (citation omitted).  Plaintiff's lower back pain and Hepatitis C were conditions worthy of

comment and treatment.

       The subjective inquiry requires a showing that corrections officers acted with deliberate

indifference to plaintiff's serious medical need.  Id.  "[A] prison official cannot be found liable

under the Eighth Amendment for denying an inmate humane conditions of confinement unless

the official knows of and disregards an excessive risk to inmate health or safety . . . ."  Farmer,

511 U.S. at 837.  A difference of opinion as to the specific course of treatment does not establish

deliberate indifference.  Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

       Plaintiff "must show that the course of treatment [defendants] chose was medically

unacceptable under the circumstances, and [he] must show that [defendants] chose this course in

conscious disregard of an excessive risk to plaintiff's health."  Jackson v. McIntosh, 90 F.3d

330, 332 (9th Cir. 1996) (internal citations omitted).  Dr. Hansen examined plaintiff a total of six times over a little more than a year.  He prescribed ketoprofen, Lodine, and naproxen, all medications used to alleviate pain, swelling and stiffness caused by plaintiff's arthritis.  He also prescribed an extra pillow, as well as walking and back exercises.  Plaintiff's disagreement with Dr. Hansen's prescribed course of treatment does not create a triable issue of fact on the issue of deliberate indifference.  Several doctors, including Dr. Paulson and Dr. Degner, neither of whom are defendants here, recommended the same treatment as Dr. Hansen did.  Plaintiff has failed to meet his burden of showing Dr. Hansen chose a method of treatment in conscious disregard of an excessive risk to plaintiff's health.

As for the alleged ill effect of the prescribed medications on the health of plaintiff's liver, when Dr. Hansen learned about plaintiff's elevated liver enzymes, Dr. Hansen referred plaintiff to Dr. Dewsnup–the infectious disease specialist–for further evaluation and testing.  Plaintiff has failed to raise an issue of fact suggesting Dr. Hansen deliberately chose a course of treatment in conscious disregard of an excessive risk to plaintiff's health.  See Lopez, 203 F.3d at 1131 ("Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment . . . . Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights.").

Finally, even assuming the other defendants' involvement in the grievance process here is sufficient to subject them to suit, plaintiff has failed to demonstrate they approved of a treatment plan in conscious disregard of an excessive risk to plaintiff's health.

Page 10 - OPINION AND ORDER

Because I cannot find that defendants had the requisite states of mind to make out an Eighth Amendment violation, plaintiff's case is dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, defendants' Motion for Summary Judgment [34] is granted. This case is dismissed with prejudice.

IT IS SO ORDERED.

DATED this ____9th____ day of December, 2014.

 /s/ Garr M. King_____
Garr M. King
United States District Judge

Page 11 - OPINION AND ORDER